[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION RE: PARTIAL JUDGEMENT
By complaint dated April 17, 1998 the plaintiff husband John P. Havanec commenced this action seeking a dissolution of marriage on the grounds of irretrievable breakdown, joint legal custody of the minor children, equitable distribution of all marital assets and other relief. The defendant wife Mary Ellen Havanec appeared through counsel. The court appointed a guardian ad litem for the minor children on. May 5, 2000. Both parties with counsel and the guardian ad litem appeared before the court on July 21, 2000 and presented testimony and exhibits. Due to the fact CT Page 10621 that the defendant had previously filed a Chapter 11 bankruptcy petition in Federal District Court in Hartford, Connecticut prior to the date of the hearing, the court limited the hearing to issues involving custody, visitation, periodic alimony, child support and exclusive possession of the family car. The court after hearing the testimony and reviewing the exhibits makes the following findings of fact:
The plaintiff husband married the defendant wife, whose maiden name was Ceraldi on October 3, 1981 at West Hartford, Connecticut. He has resided continuously in the state of Connecticut for one year next preceding the date of the filing of this complaint. All statutory stays have expired. The parties have four minor children born to the defendant wife since the date of marriage, all issue of the marriage: Shaun J. Havanec born February 16, 1984, Shannon M. Havanec born June 9, 1985, Megan A. Havanec born July 31, 1989, and Ryan A. Havanec born April 6, 1992. No other minor child or children have been born to the defendant wife since the date of the marriage. The court further finds that no state or municipal agency has or is contributing to the support of the parties and/or their minor children.
The plaintiff is 49 years old and educated in the field of computer science. He presently is employed as a technical support manager for Konica Business Technologies, Inc. The plaintiff's work history involves employment in the computer field and is highly skilled in the area of disaster recovery, maintenance and computer debugging. He has eleven people working under him and presently enjoys income in the approximate amount of $80,000.00 per year. The plaintiff completed high school and two years of college education.
The defendant wife is 44 years old and a graduate of high school. When the parties met she was employed as an administrative assistant at Royal Typewriter. She changed jobs from Royal Typewriter to Mobil, Inc. where she quit one day after the parties married. After six months of marriage she worked for a temporary period of time at a doctor's office and later worked in the real estate industry as a real estate manager and babysitter for her employer. The court finds that the defendant has primarily worked in the marital residence as a homemaker throughout the course of the marriage. The defendant has recently obtained a job as a secretary in an office estimating her income to be $288.50 per week or approximately $15,000.00 per year. During the pendency of this action the defendant was ordered to search for employment. The court finds after hearing the testimony of the parties that defendant was not diligent in her efforts to seek gainful employment. The court further finds that the plaintiff was not aware of any part-time employment that the defendant had offered to her from 6:00 p.m. in the evening to 12:00 a.m. at Edwards Company. The court is convinced that the plaintiff would have made CT Page 10622 himself available for that period of time to assist in child care and household duties if in fact this job opportunity was made known to him by the plaintiff.
The plaintiff suffers from physical maladies including problems with her kidneys. The defendant is further taking anti-anxiety medication and has taken pain medication as a result of the seguelae from surgery in the past. The court further finds that said medical conditions do not prohibit the defendant from obtaining and performing sedentary work including secretarial tasks. Furthermore, the defendant has not claimed that she is unable to perform substantial gainful employment.
The marriage of the parties has resulted in the birth of four minor children. Throughout the course of the marriage it was the job of the plaintiff to go out and work in the computer field and obtain sufficient money to maintain the marital home expenses and support the needs of the plaintiff, defendant and children. It is evident from the testimony of the parties and exhibits that the defendant's primary role was that of a homemaker, wife and mother.
The parties and their minor children have been totally alienated and/or separated from the defendant's family, as a result of a verbal altercation between the defendant and the plaintiff's mother, Mrs. Beatrice Havanec. No contact has been made between the parties and children of this action and the paternal grandmother and her family since approximately 1988. As to the issue of parental alienation the court finds that the actions of the plaintiff and defendant have contributed to the plaintiff's alienation from his minor children. It is clear from the evidence that the plaintiff, the family breadwinner was always concerned with family finances and the ability to meet expenses. It is also evident and clear from the record that Mrs. Havanec spent money that she didn't have by way of credit cards, bounced checks, etc. during the marriage. As the marriage progressed and the financial pressures mounted, the parties began a course of yelling and swearing at each other in front of the children. The defendant lost his temper on numerous occasions with his spouse in front of the children. Likewise, the defendant utilized inappropriate language and engaged in inappropriate conduct concerning these disputes with her husband in front of the children. The net result of the financial and personal dispute of the parties was the plaintiff's statement to the defendant that he was seeking a divorce. The plaintiff contends he used this legal threat as a last ditch effort to resolve the financial and personal differences between the parties.
The court finds that during the marriage the plaintiff would return home from work and not engage in normal discourse and discussions with his children and his wife. Furthermore, his wife, the defendant, engaged CT Page 10623 in late night telephone calls with friends and interaction with the internet while the plaintiff was attempting to obtain the necessary sleep in the marital bedroom. Once the plaintiff was convinced that the defendant could not change her spending habits and that the relationship of the parties could not be saved, the plaintiff moved from the marital residence in February 1999. He moved in with his mother in East Hartford. Since the separation the children have resided with their mother in the marital residence, with their father obtaining visitation rights through an agreement made in order of the court on March 23, 1999. Said visitation order prohibits the plaintiff from bringing his children to his mother's home in East Hartford.
Subsequent to the date of the separation and visitation order the court hereby finds that the defendant has done everything in her power, including matters not in her legal control, to upset the father's access with the children. The evidence is clear that the minor child Shaun, the 16 year old son, does not want to have anything to do with his father. The mother blames this position on the father's withdrawal of funds from the child's bank accounts at his credit union. The minor child Shannon does not want regular contact with her father based on her contention that her father refused to provide braces for his daughter on her thirteenth birthday as previously promised. The father's explanation of the reasons for a need to withdraw funds from his son's bank account and explanation of the need to wait until new insurance was in place for orthodonture work were reasonable explanations as far as the court is concerned. However, the sickness in the relationship between the parties and/or lack thereof in constructive communication with their children has resulted in both Shaun and Shannon taking the mother's side against the father. The two younger children, as time goes on, are leaning towards no contact with their father rather than the development of a healthy relationship.
Both parties have made allegations against the other concerning actual and/or threatened physical abuse against the other. The mother has claimed that the father has abused Shaun with the father's explanation to the contrary. The father has claimed that the mother has held a knife to him on three separate occasions with the mother contending that said statements are false. DCF has been called on more than one occasion to evaluate claims of abuse and/or neglect which were found unsubstantiated with the files closed.
The mother's conduct since the date of separation has clearly resulted in further alienation between all of the children and their father. The defendant was held in contempt for violating the court orders concerning visitation and access which is self evident by the court's pendente lite rulings. While the court feels that the defendant loves her children, CT Page 10624 wants to protect them and to maintain them in the marital household, she has interacted with the children in a manner which is deleterious to their best interests. The children have been made aware of all of the financial problems of the family with the oldest child Shaun assuming the role of a protector of his mother. This conduct has permeated the relationship or lack thereof between the children and their father. Their father's conduct prior to the separation, i.e. loud verbal outbursts, long work hours, lack of involvement with the children when he returned home from work also contributed to the alienation.
It is of no import for the court to place certain percentages on each party's actions resulting in parental alienation. The guardian ad litem and family relations officer take the position that the children should primarily reside with their mother, with their father having immediate visitation rights with the three youngest children. The relationship with Shaun has deteriorated to the point that if contact between father and son is to occur in the future, therapeutic work must be performed prior to visitation.
The plaintiff argues that he should have custody of the three youngest minor children with custody of Shaun awarded to the defendant. He proposes that Shaun and the defendant can reside in the home of the maternal grandmother which the court finds is inadequate to meet the physical needs of the proposed occupants. The Court is left with the unenviable task of deciding who should be awarded custody. A father who was absorbed in his work, spent insufficient time with his children and with a temper that was emotionally damaging or a mother who spent money like water, failed to obtain work, was contemptuous in her conduct re: court orders and further alienated all of the children from their father. An award of residential custody to the plaintiff father punishes the defendant mother to the detriment of the children.
The Court has considered all of the statutory factors concerning custody and visitation set out in Connecticut General Statutes §§46b-56, 46b-56a and 46b-59. The Court has also considered all of the factors in Connecticut General Statutes §§ 46b-81, 46b-82, 46b-83,46b-84 and 46b-62 and other pertinent statutes, tax implications, earnings and earning capacity differential, causes for the breakdown of the marriage and the consequences of the financial award set forth below. The Court, with jurisdiction in the matter finds that the facts set out in the complaint are proven true. Judgment shall enter dissolving the marriage on the grounds of irretrievable breakdown. It is further ordered:
1. Custody and Visitation
CT Page 10625
After deep and thorough consideration, the court awards joint legal custody of the four minor children to the parties. The defendant is awarded residential physical custody of all four children. The defendant shall consult with the plaintiff prior to making any major decisions concerning education, non-emergency medical care and treatment, religious activities and extracurricular activities of the children. The plaintiff shall have reasonable rights of visitation with the two youngest children, Megan and Ryan as follows:
A. (1) every Tuesday 5:30-7:30 p.m.;
(2) every other weekend Saturday and Sunday 10:00 a.m. to 7:30 p.m. for each day for three consecutive weekend visits; and
(3) alternate Friday every 5:30 to 8:00 p.m. preceding the children's weekend with the defendant.
B. Beginning the fourth weekend visit and all subsequent weekend visits by Megan and Ryan with the plaintiff shall extend from Friday at 5:30 p.m. to Sunday at 7:00 p.m., with Tuesday and alternate Friday visitation unchanged.
C. Megan and Ryan will observe major holidays with each of their parents on an alternating basis as follows: During even years, the children will observe Easter Sunday, Independence Day, and Christmas, (from 3:00 p.m. on Christmas day until 7:00 p.m. on the evening before school begins following the holiday vacation) with their father. The children will observe Memorial Day and Labor Day weekends, (from Friday at 5:30 p.m. until Monday at 7:00 p.m.), the Thanksgiving Holiday (Thursday morning through Sunday evening at 7:00 p.m.), and Christmas (from 9:00 a.m. on Christmas Eve until 3:00 p.m. on Christmas Day) with their mother. This holiday schedule will reverse during the odd years. The children will observe Mother's Day with their mother and Father's Day with their father every year. The holiday schedule supercedes the routine parenting schedule. If a legal holiday shall fall on a Friday or a Monday, then that holiday will attach the parent's weekend access.
D. Each parent may schedule up to two (non-consecutive) weeks during each summer school vacation in which to go away on vacation with the children. Each parent will notify the other at least six weeks in advance of such vacation plans. In the event of a conflict in which each parent wishes to take the same vacation week, then the mother's preference will prevail during even years and the father's preference will prevail during odd years.
E. Each parent will encourage free communication between the children CT Page 10626 and their other parent. Neither will do anything to impede or restrict communication by phone or by mail between the children and their other parent, whether the communication is initiated by the children or by the other parent. Neither parent will make disparaging remarks about the other parent in the presence of the children or will act in any way that may negatively influence the children's opinion of the other parent.
F. The plaintiff will be responsible for all transportation of the children when it is his time to care for them. The defendant will have the children ready and prepared to go with their father at the appointed times. Plaintiff will notify defendant if he expects to be more than 15 minutes later when picking up or dropping off the children. Neither parent will schedule the children for activities that will interfere with the other's parenting time or that will encumber the other parent in any way without first obtaining the approval of the other parent or an order from the Court.
G. The parents are encouraged to exercise flexibility in their implementation of this parenting arrangement. They can and should make modifications to this plan whenever such modifications are appropriate in order to best meet the needs of the children and to accommodate each other's special needs. All modifications must be by mutual agreement of the parents signed in writing and original filed with the Court.
H. The parents will agree on a therapist who is experienced in dealing with issues related to children's adjustment to divorce and they will cooperate in scheduling a consultation for the children with that therapist within four weeks. Said therapy shall be commenced for the three minor children, Shannon, Megan and Ryan. The parents will cooperate with the recommendations of the therapist in his or her effort to help the children to adjust positively to the changes that are taking place in their family. The parties, through legal counsel shall file an agreement with the Court as to the name of the therapist (covered by the plaintiff's insurance carrier) and the date therapy is to commence. If the parties counsel cannot agree the court will appoint a therapist at a hearing requested by either party. Shannon, Megan and Ryan are ordered to go to therapy with the designated therapist.
I. The plaintiff shall have reasonable rights of visitation with Shannon by phone, e-mail and/or in person as can mutually be agreed by child and plaintiff with the assistance of the therapist.
J. No visitation is awarded to the plaintiff concerns the minor child Shaun due to the present status of his relationship with his father. Shaun's hostility towards his father and mother's role in fostering it shall be a subject to be discussed with the therapist chosen above. CT Page 10627 Visitation with Shaun is left to the further order of the Court.
K. The parties shall give (90) days written notice if either plans to relocate outside the territorial boundaries of the State of Connecticut.
2. Support and Health Insurance for Children
As to the issue of child support, plaintiff shall pay child support to the defendant in the amount provided by the Child Support Guidelines equaling $410.00 per week. The plaintiff shall be entitled to take all of the children as exemptions for income tax purposes. The plaintiff will maintain health insurance for the minor children which the defendant will pay in $100.00 per year per child for unreimbursed and uncovered healthcare expenses. Any uncovered and unreimbursed expenses shall be paid 89% by the father and 11% by the mother. Any qualifying costs for childcare shall also be borne on said percentage basis.
3. Alimony
As to the issue of periodic alimony, the Court orders the plaintiff to pay over periodic alimony in the amount of $100.00 to the defendant. The defendant shall obtain health insurance for herself through COBRA or other carrier at her own expense. Said amount and duration of any future order of alimony, periodic lump sum or mixed shall await a hearing when the court shall determine all outstanding issues including but limited to alimony, property settlement, attorneys fees, etc. Said hearing shall await the granting of a relief from said or discharge order of the. Federal District Bankruptcy Court 11 U.S.C. § 362.
 ___________________, J. Devine